IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DARREN REMMER,** | ) | |
| **#K54667,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-CV-0420-JPG |
| | ) | |
| vs. | ) | |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **DR. FAIYAZ AHMED, DR. VIPIN SHAH,** | ) | |
| **NURSE DOWDY, JOHN DOE, AND** | ) | |
| **JANE DOE,** | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Darren Remmer, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lincoln Correctional Center ("Lincoln"), brings this action for deprivations of his constitutional rights. Plaintiff alleges that he has not received adequate medical care for two hernias that he sustained while working as an inmate aid in the medical unit of Lawrence Correctional Center ("Lawrence"). He seeks monetary damages and any other relief the Court deems appropriate.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.

1

28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

In his Complaint, Remmer alleges that his problems began on November 25, 2017, when he reported to work at Lawrence Correctional Center as a prison healthcare porter (Doc. 1 at 12). He alleges that on that date Defendant Dowdy requested his assistance with inmate Leonard Blair, a patient in the healthcare unit (*Id.*). Dowdy had discovered that Blair was dead, and she asked Remmer to help her move Blair from the bed to the floor. Blair weighed approximately 270 pounds (*Id.*). While moving him to the floor, Dowdy allegedly dropped Blair's feet, so more weight shifted to Remmer (*Id.* at 13). The sudden shift of weight caused Remmer to feel a strain in his groin area (*Id.*). Remmer reported the issue to Dowdy, who recommended that he file a request slip to see a doctor (*Id.*).

Subsequently on November 27, 2017, Remmer informed Defendant Cunningham, the healthcare administrative director, about the incident and his injury (*Id.* at 13). Cunningham apologized for Remmer's involvement with Blair and Dowdy and immediately sent an email request for him to be seen by a doctor. Drs. Ahmed and Shah diagnosed Remmer with two inguinal hernias—one on the left and one on the right (*Id.*). Outside specialist, Dr. Guerriero, verified the diagnosis (*Id.*).

Remmer alleges that Defendant Dowdy is responsible for physical and emotional trauma that he sustained as a result of being asked to help move a dead inmate's corpse (*Id.*). He suffers from chronic pain, nightmares, stress, depression, anxiety, and post-traumatic stress disorder ("PTSD") (*Id.* at 13-14). He was diagnosed with PTSD and now suffers side effects from the Paxil prescription he was given to cope with his symptoms (*Id.* at 14). Physically, he alleges that Nurse

Dowdy exhibited deliberate indifference to his serious medical need by failing to provide pain relievers for his hernias or to make an immediate recommendation that he see a doctor (*Id.*). He seeks $1 million dollars in compensation from Defendant Dowdy.

Remmer also alleges that Defendant Dr. Ahmed was deliberately indifferent to his serious medical needs because he failed to order hernia surgery on two occasions, he failed to supply adequate pain medications, and he did not adequately address blood pressure problems. First, he alleges that Ahmed refused to recommend hernia surgery because Wexford would not pay for surgery for inguinal reducible hernias (*Id.* at 15). Remmer worked around this refusal and secured surgery on January 24, 2018, by pursuing an emergency grievance with Warden Lamb and Director Cunningham (*Id.* at 15-16). After the surgery on his left side, the outside care provider recommended that he follow-up in a few months to address the second hernia. Defendant Ahmed refused to make a second recommendation for surgery (*Id.*). Subsequently, Dr. Ahmed informed Remmer that Wexford denied approval for a second surgery on June 8, 2018 (*Id.* at 16).

Remmer claims that Ahmed was deliberately indifferent because he also did not provide alternative treatment by way of proper pain medications (*Id.* at 16-17). In the interim, Remmer claims that his blood pressure skyrocketed because of pain, and the medications he was prescribed were not helpful in treating the issue. He claims that on February 3, 2018, he was rushed to the hospital after being found unconscious and with a high blood pressure (*Id.* at 17). Later follow-up with a cardiologist resulted in new prescriptions (*Id.*). As a result of Defendant Ahmed's actions, he alleges that he was forced to suffer extreme and debilitating pain that interfered with his ability to carry on a normal life (*Id.* at 18). He seeks $1 million dollars in compensatory damages and $100,000 in punitive damages (*Id.*).

Likewise, Remmer alleges that Defendant Dr. Shah provided inadequate care for his serious medical needs (*Id.* at 18-19). Shah recommended a hernia belt and told Remmer not to lift over 15 pounds, but he did not recommend surgery because he believed Wexford would not pay for it (*Id.* at 18-19). After surgery, Shah was not responsive to Remmer's complaints about swelling and pain at the surgical site (*Id.* at 19). Remmer alleges that he suffered undue pain and suffering as a result of Shah's chosen course of treatments (*Id.*). He seeks $1 million dollars in compensatory damages and $100,000 in punitive damages (*Id.* at 19-20).

Finally, Remmer allege that Wexford violated his Eighth Amendment rights by maintaining a policy or practice of denying treatment because of the cost, regardless of his individual circumstances (*Id.* at 20-21). Despite his grievances about his hernias being deemed an emergency at the institutional level, Wexford refused to act or authorize surgery (*Id.*). Remmer alleges that it is not appropriate to deny care simply because a surgery is deemed elective (*Id.*). He seeks $1 million dollars in compensatory damages and $100,000 in punitive damages.

In support of his Complaint, Remmer appended more than eighty pages of medical records and grievances. The records are consistent with the allegations he makes in his pleadings regarding the nature of his injuries and the available treatment options.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to adopt the Counts in the *pro se* action as follows:

**Count 1:** **Defendant Dowdy was deliberately indifferent by forcing Remmer to touch a deceased inmate's corpse, and for failing to provide any treatment for injuries Remmer sustained while doing so**

**Count 2:** **Defendant Ahmed exhibited deliberate indifference to a serious medical condition by delaying hernia surgery or follow-up appointments for Remmer's hernias**

> **Count 3:** Defendant Shah exhibited deliberate indifference to a serious medical condition by failing to render adequate pre- and post-operative care for Remmer's hernias
>
> **Count 4:** Defendant Wexford Health Sources, Inc. maintained a policy or practice that violated the Eighth Amendment by denying adequate medical care without making an individualized need assessment

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Count 1

The Eighth Amendment prohibits the cruel and unusual punishment of inmates and imposes an obligation upon prison officials to provide them with adequate medical care for serious medical conditions. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). An Eighth Amendment claim for the denial of medical care has an objective and a subjective component. The objective component requires an inmate to demonstrate that he suffers from an "objectively, sufficiently serious" medical condition. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is considered sufficiently serious if failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective component requires Plaintiff to demonstrate that each individual defendant responded to his serious medical condition with deliberate indifference.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). Individuals named in the caption of the case, but not mentioned in the body text of the complaint are dismissed for failure to state a claim because they cannot fairly be said to be on notice of claims made against them.

This occurs when an official "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653. The doctrine of *respondeat superior* is inapplicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, liability hinges on personal responsibility for the deprivation of a constitutional right. *Id*. at 740 (citation omitted). An inguinal hernia can constitute a sufficiently severe medical condition to warrant treatment. *Gonzalez v. Feinerman,* 663 F.3d 311, 314 (7th Cir. 2011).

While nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). Nurses, like physicians, may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's health. *See id.* "[A] nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority." *Id.; see also Rice ex rel. Rice v. Correctional Med. Servs*., 675 F.3d 650, 683 (7th Cir. 2012) ("[A] nurse may not unthinkingly defer to physicians and ignore obvious risks to an inmate's health....").

A prisoner's disagreement with a medical professional's exercise of their medical judgment, without more, is insufficient to establish a claim for deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Dissatisfaction with a prescribed course of treatment rises to the level of a constitutional violation only if the medical treatment "is so blatantly inappropriate as to evidence intentional mistreatment to likely aggravate the prisoner's condition" or the provider's decisions are "such a substantial departure from accepted professional judgment,

practice, or standards, as to demonstrate that the [provider] actually did not base the decision on such a judgment. *Id.; Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Remmer alleges that Defendant Dowdy exhibited deliberate indifference to his serious medical condition by failing to offer pain medications or to set up a doctor's appointment when he got injured in her presence. Inguinal hernias can be a serious medical condition under Seventh Circuit precedent, so Remmer has established an objectively serious condition. It is possible that a jury could conclude that Dowdy's response to the hernias was insufficient and an improper exercise of judgment, so Count 1 shall proceed against Defendant Dowdy.

**Count 2**

The Seventh Circuit specifically addressed inguinal hernias in *Gonzalez v. Feinerman,* 663 F.3d 311 (7th Cir. 2011). Gonzalez suffered from a hernia over the course of seven years. *Id.* at 312-14. On multiple occasions he saw doctors who prescribed low doses of pain medication and tried to push his hernia back into place. *Id.* He only began to complain when conditions worsened in two years leading up to his lawsuit, at which time he alleged that the pain had become extreme and debilitating to the point of interfering with his normal daily activities. *Id.* at 314-15. The *Gonzalez* Court found that, in light of the duration of his injury, the worsening of his symptoms, and his long period of remaining incarceration, the plaintiff may ultimately prove a valid claim for deliberate indifference because physicians cannot deliberately continue with a course of care that is ineffective. *Id.* The Court also noted that inguinal hernias are common among men and that the only permanent fix is surgery.

The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Edwards*, 478 F.3d at 831; *see also Arnett*, 658 F.3d at 751 (prisoner need not show that his or her medical needs were "literally ignored"). Deliberate indifference may occur where a

7

prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment, *Edwards*, 478 F.3d at 831, acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Remmer alleges that Dr. Ahmed delayed surgical treatment for the hernia on his left side, and refused treatment for the hernia on his right side. Remmer also alleges that the pain from his hernias escalated over time to a point where it caused spikes in his blood pressure and prevented him from doing normal daily activities. The identification of an inguinal hernia does not automatically establish deliberate indifference, because the appropriate course of treatment can depend on the severity of the hernia. However, Remmer has alleged enough here to allow Count 2 to proceed against Dr. Ahmed. A jury could reasonably conclude that Defendant Ahmed's chosen course of treatment was inappropriate and harmful.

**Count 3**

The rationale applicable to Dr. Ahmed in Count 2 is directly applicable to Dr. Shah in Count 3. Accordingly, Count 3 shall proceed against Dr. Shah.

**Count 4**

In *Shields v. Illinois Dept. of Corrections,* 746 F.3d 782, 796 (7th Cir. 2014), the Seventh Circuit held that Wexford may be held liable for deliberate indifference if an inmate can establish that he has been harmed by a custom, policy, or practice of Wexford. The *Shields* Court also concluded that a few discreet incidents of less than ideal care cannot be strung together to establish a policy or practice. *Id. Perez v. Fenoglio* briefly revisited the issue, noting that an assertion that a nurse would not give stitches because a physician was not present, and that Wexford had a policy

or practice of denying care without a doctor, could be sufficient information to state a claim for a constitutional deprivation. 792 F.3d 768, 780 (7th Cir. 2015); *see also Gills v. Coe,* 2017 WL 679914 (S.D.I.L. 2017) (finding that Plaintiff stated sufficient information about a policy or practice by Wexford of denying surgical care for inguinal hernias to proceed beyond summary judgment).

Here, Remmer alleged that Wexford had a policy or practice of denying surgery for any hernia they considered "reducible." He claims that Drs. Ahmed and Shah, as well as Director Cunningham, told him about this policy and indicated it was the reason he would not get hernia surgery. Such a policy could theoretically cause a delay in treatment or a potential denial of needed treatment. Accordingly, Count 4 sufficiently identifies a potential constitutional harm by Wexford to proceed beyond screening.

**Pending Motion**

Remmer filed a Motion for Recruitment of Counsel (Doc. 3) with his Complaint wherein he avers that he has sought the assistance of at least three lawyers with this case. Additionally, he notes that he has some college education. Remmer's complaint is articulate and well organized. Surely he may benefit from counsel for dispositive motions or a future trial, but, before appointing counsel, the Court will at least allow the Defendants to appear and respond. It is possible that Remmer will be able to represent himself depending on the complexity of the answers and defenses presented. Accordingly, Remmer's motion is DENIED as premature at this juncture.[2] He should refile his motion after Defendants have responded if he feels assistance

---

[2] *Pickett v. Chicago Transit Authority,* Case No. 18-2785 (7th Cir. July 17, 2019) (finding that a Court must articulate detailed reasons as to why appointment of counsel is not needed); *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) (en banc) (a litigant's competence to represent himself may warrant denying appointment of counsel).

9

is still necessary. At that time, he need not make a new attempt to seek representation from three lawyers, because he has already shown the Court that he took this step.

### Disposition

**IT IS HEREBY ORDERED** that **Count 1** will proceed against **Defendant Dowdy**.

**IT IS HEREBY ORDERED** that **Count 2** will proceed against **Defendant Dr. Ahmed**.

**IT IS FURTHER ORDERED** that **Count 3** will proceed against **Defendant Dr. Shah.**

**IT IS FURTHER ORDERD** that **Count 4** will proceed against **Defendant Wexford Health Source, Inc.**

**IT IS FURTHER ORDERED** that **Defendant John or Jane Doe** will be **DISMISSED WITHOUT PREJUDICE** from this case because Plaintiff failed to specifically discuss any conduct by these individuals in the body of his complaint.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Dowdy, Dr. Ahmed, Dr. Shah, and Wexford (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/22/2019**

                                          **s/J. Phil Gilbert**
                                          **United States District Judge**