IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARREN REMMER, #K54667, <br><br>   Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., FAIYAZ AHMED, VIPIN SHAH, and CLAUDIA DOWTY,[1] <br><br>   Defendants. | Case No. 19-cv-00420-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendant Claudia Dowty's motion for summary judgment (Doc. 37). Dowty argues that Plaintiff Darren Remmer failed to exhaust his administrative remedies prior to filing suit. Remmer, through court recruited counsel, filed a response in opposition to the motion. (Doc. 51). On January 21, 2021, the Court held an evidentiary hearing. For the reasons set for the below, the motion for summary judgment is granted in part.

## BACKGROUND

Darren Remmer, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Lincoln Correctional Center, commenced this action by filing

---

[1] Defendant Dowty has identified her correct name in her Motion for Summary Judgment. (Doc. 37). The Clerk of Court is **DIRECTED** to modify the name on the docket sheet accordingly: Claudia Dowty ("Nurse Dowdy)".

a Complaint pursuant to 42 U.S.C. § 1983 for the alleged deprivation of his constitutional rights. (Doc. 1). As to Defendant Dowty, Remmer alleges that on November 25, 2017, while working as an inmate aid in the medical unit of Lawrence Correctional Center ("Lawrence"), Nurse Dowty directed him to help her move a deceased inmate, who weighed approximately 270 pounds, from the bed to the floor. During the move, Nurse Dowty dropped the deceased inmate's feet, so more weight shifted to Remmer. The sudden shift in weight caused Remmer to feel a strain in his groin area. Remmer claims he reported the issue to Nurse Dowty. He alleges that he told her he was in excruciating pain and asked for some kind of pain medication. Rather than provide him pain medication or ensure he received prompt medical treatment, Nurse Dowty recommended that he file a request slip to see a doctor. Later, Remmer was diagnosed with two inguinal hernias, and he claims that he continued to not receive adequate medical care for his injuries. He is proceeding on the following claims:

**Count 1:** Dowdy was deliberately indifferent by forcing Remmer to touch a deceased inmate's corpse and for failing to provide any treatment for injuries Remmer sustained while doing so.

**Count 2:** Defendant Ahmed exhibited deliberate indifference to a serious medical condition by delaying hernia surgery or follow-up appointments for Remmer's hernias.

**Count 3:** Defendant Shah exhibited deliberate indifference to a serious medical condition by failing to render adequate pre- and post-operative care for Remmer's hernias.

**Count 4:** Defendant Wexford Health Sources, Inc. maintained a policy or practice that violated the Eighth Amendment by denying adequate medical care without making an individualized need assessment.

In the motion for summary judgment, Nurse Dowty argues that Remmer failed to grieve his claims against her for the alleged deliberate indifference that occurred on November 25, 2017. (Doc. 38, p. 6). She states that there are two emergency grievances filed by Remmer relevant to the claims in this case, dated December 28, 2017, and June 10, 2018. Dowty argues that the December 28, 2017 emergency grievance solely pertains to alleged actions taken by Defendants Dr. Ahmed, Dr. Shah, and Wexford Health Sources, Inc. ("Wexford"), and does not include the allegations of deliberate indifference against Dowty, as set out in the Complaint. (*Id.* at p. 7-9). The grievance recounts the events that occurred on November 25, 2017, but fails to include allegations against Nurse Dowty for failing to provide pain medication and ensure prompt treatment from a doctor for his injuries. The grievance also only asks that "Dr. Shah V. and Dr. Ahmed F. be held responsible for their negligence and that [Plaintiff] be compensated for [his] injury, pain, suffering, mental stress, and misdiagnosis" (Doc. 38-1, p. 7), and does not seek relief pertaining to Nurse Dowty's alleged actions. Because the December emergency grievance consists of allegations directed against Dr. Ahmed, Dr. Shah, and Wexford, this grievance does not fully exhaust claims against Dowty.

Likewise, Dowty argues that the June 10, 2018 emergency grievance only pertains to alleged actions taken by Defendants Dr. Ahmed and Wexford for treatment following Remmer's hernia repair surgery in late January 2018. Additionally, the June 10, 2018 emergency grievance was filed more than 60 days after the incidents on November 25, 2017, as is required by Illinois Administrative Code. (Doc. 38, p. 10). Therefore, not only does the June emergency grievance fail to grieve claims against Nurse Dowty but also

was untimely filed.

In response, Remmer argues that Nurse Dowty's motion for summary judgment is not supported by admissible evidence. (Doc. 51, p. 11). The motion is premised on the content of grievance records that are not self-authenticating, and Nurse Dowty did not attach a declaration establishing the admissibility of those documents. Remmer argues that the grievance records are hearsay and inadmissible in summary judgment proceedings. Because Nurse Dowty has not met her burden of proof to establish that Remmer failed to exhaust his administrative remedies, the Court should deny the motion for summary judgment.

In the alternative, Remmer argues that even if the grievance records are admissible, the December 28, 2017 emergency grievance fully exhausted his administrative remedies. The grievance was timely filed, identifies Nurse Dowty by name, contains sufficient factual detail regarding the events on November 25, 2017, and was timely appealed to the Administrative Review Board. Remmer states that the Illinois Administrative Code does not require him to request relief against Nurse Dowty or include her name in the "relief requested" section of the grievance form. The December emergency grievance was properly submitted and appealed and adequately alerts the prison to the problem with Nurse Dowty. Thus, the December emergency grievance fully exhausted his claims against her.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are]

entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems

appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. Because exhaustion is an affirmative defense, the burden of proof is on the defendants to demonstrate that "remedies were available and that [the plaintiff] failed to use them." *Ried v. Balota,* No. 19-1396, 2020 WL 3248128, at *3 (7th Cir. June 16, 2020). *See also Kaba v. Stepp,* 458 F. 3d 678, 686 (7th Cir. 2006).

As an inmate confined within the Illinois Department of Corrections, Remmer was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the Grievance Officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer considers the grievance and reports his or her findings and recommendations "in writing to the Chief Administrative Officer…" 20 ILL. ADMIN. CODE §504.830(e). The Chief Administrative Officer then advises the offender of the decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly

to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b).

## ANALYSIS

Before discussing the merits of the motion for summary judgment, the Court will address Remmer's arguments that the documents presented by Nurse Dowty in support of the motion were unauthenticated, and thus inadmissible hearsay, and the objections to the Court conducting an evidentiary hearing raised by Remmer's counsel at the hearing.

First, the Court finds that the grievance records submitted by Nurse Dowty are admissible. Grievance documents, such as the ones presented by Nurse Dowty, are routinely accepted by the Court in prisoner cases at the summary judgment on exhaustion phase for the purpose of determining whether administrative remedies have been exhausted. As stated at the hearing, the Court can consider unauthenticated documents on motions for summary judgment if it appears that they are capable of authentication at trial. *See Boyce v. Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) ("federal courts routinely consider unauthenticated documents on motions for summary judgment, for example, when it is apparent[ ] that

such documents are capable of reduction to admissible, authenticated form." (quoting *Talley v. Triton Health Sys., LLC*, No. 14-cv-02325-RDP, 2016 WL 4615627, at *8 (N.D. Ala. Sept. 6, 2016)). *See also Saiger v. Dart,* No. 13 C 5495, 2017 WL 1927689, at *1 n. 3 (N.D. Ill. May 10, 2017) (allowing a handwritten medical log as a business record "that could be authenticated at trial and thus properly considered on summary judgment."); *Hartford Fire Ins. Co. v. Aaron Ind., Inc.,* No. 18 CV 4123, 2020 WL 91991 at *5 (N.D. Ill. Jan. 8, 2020) (ruling that "Hartford would be able to produce a witness at trial that could authenticate [insurance] documents and, likely, establish that they fall within the business records exception to the hearsay rule"). Here, the grievance records could be authenticated at trial, and in fact, Nurse Dowty has already filed an affidavit from a custodian of records at IDOC (Doc. 57-1), demonstrating their trustworthiness. *See Woods v. City of Chi.,* 234 F. 3d 979, 988 (7th Cir. 2000). Additionally, Remmer submitted the June 10, 2018 emergency grievance, grievance officer response, and ARB response along with his Complaint (Doc. 1, p. 94, 104-106). He also has included the ARB response to his December 28, 2017 emergency grievance (*Id.* at p. 101). Therefore, he has already "conceded the accuracy" of four of the seven documents that Nurse Dowty has sought to produce in support of her motion. *Thanonginsh v. Board of Educ.,* 462 F. 3d 762, 778 (7th Cir. 2006). For these reasons, the grievance records are properly considered on summary judgment.

Second, the Court finds the objection to the evidentiary hearing asserted by Remmer's counsel is without merit. Counsel argued that pursuant to Seventh Circuit precedent an evidentiary hearing on a motion for summary judgment regarding exhaustion is proper only when there is a disputed of issue of material fact and the motion

for summary judgment has been denied by the Court.

The Court has found several cases from the Northern District of Indiana that utilize the procedures, as put forth by Remmer. In these cases, when there was a disputed issue of fact pertaining to whether the plaintiff prisoner exhausted his administrative remedies, the district court denied the motion for summary judgment on exhaustion and gave the defendants fourteen days to waive their exhaustion defense or advise the court whether they wish to proceed with a hearing pursuant to *Pavey. See Martin v. Jones,* No. 19-CV-1102 DRL-MGG, 2021 WL 325874 (N.D. Ind. Feb. 1, 2021); *Corbin v. Ind.,* No. 16-CV-00602, 2017 WL 1509307 (N.D. Ind. Apr. 26, 2017); *Handzlik v. Lain,* No. 13-CV-119 JD, 2014 WL 4167844 (N.D. Ind. Aug. 21, 2014); *Daher v. Sevier,* No. 13-CV-940 JD, 2014 WL 4261245 (Aug. 28, 2014); *Franklin v. Fewell,* No. 13-CV-673 JD, 2014 WL 505341 (7th Cir. 2014). *See also Phelps v. Martin,* No. 08-CV-7132, 2010 WL 331721, at *5 (N.D. Ill. Jan. 22, 2010) (denying the motion for summary judgment and setting the case for status conference to discuss whether an evidentiary hearing was needed to resolve the issue of exhaustion). While this may be the preferred method by other districts, it is not the procedure of this Court, and it is not mandated by the Seventh Circuit. The central holding in *Pavey* "is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court." *Wagoner v. Lemmon,* 778 F. 3d 586, 592 (7th Cir. 2015). The Seventh Circuit "instructed district judges…to conduct a hearing to resolve factual disputes [on the issue of exhaustion]." *Winston v. Clarke,* 746 F. App'x 561, 563 (7th Cir. 2018) (citing *Pavey,* 544 F. 3d at 741-42). This instruction did not include the requirement that district courts must first deny the motion for summary judgment prior to holding an

evidentiary hearing. *See Pavey*, 544 F. 3d at 742 (specifying that the first step is that "[t]he district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate"). There is nothing that prohibits the Court from conducting a hearing in order to clarify the record and take testimony on the grievances. Accordingly, Remmer's objection is not well taken.

Finally, the Court finds that Remmer did not exhaust his administrative remedies regarding his claims of deliberate indifference against Nurse Dowty for inadequate medical treatment. At the hearing, Remmer recounted the same set of events alleged in the Complaint, that on November 25, 2017, he was injured while assisting Nurse Dowty in transferring a deceased inmate from the bed to the floor. He immediately informed Dowty that he had injured his groin area and she did not provide medical treatment. He further testified that later, despite knowledge of his injury, she instructed Remmer to help move a second patient who was dehydrated. He confirmed that there is nothing in the December 28, 2017 emergency grievance, stating that he informed Nurse Dowty that he was injured, requested assistance, and the request was refused. Remmer stated that the grievance specifically offers complaints against the doctors for refusing hernia repair surgery and grieves that the refusal to recommend surgery by Dr. Shah and Dr. Ahmed was negligent and cruel and unusual punishment.

Based on the testimony and the evidence in the record, the Court finds that neither the December 28, 2017 emergency grievance nor the June 10, 2018[2] emergency grievance

---

[2] Because the grievances do not sufficiently grieve the allegations raised in the Complaint, the Court will not address the timeliness argument raised by Defendant Dowty. (*See* Doc. 38, p. 10).

exhausted Remmer's claims against Nurse Dowty for failing to provide medical treatment. Remmer is correct in his argument that he is not required to put forth a particular claim, legal theory, or constitutional violation in a grievance. (Doc. 51, p. 15). The primary purpose of exhaustion "is to 'alert [ ] the state' to the problem 'and invit[e] corrective action.'" (Doc. 51, p. 15) (citing *Turley v. Rednour*, 729 F.3d 645, 649-650 (7th Cir. 2013)) (additional citations and quotations omitted). The Court finds, however, that the grievances fail to meet this requirement and give prison officials notice of Remmer's allegations regarding Dowty's deliberate indifference to his injuries. As Remmer testified at the hearing, Dowty is mentioned twice in the December 28, 2017 emergency grievance but only in relation to the fact that she gave Remmer instructions to lift a deceased inmate. Likewise, in the June 10, 2018 emergency grievance she is again described as giving a directive to Remmer to lift the inmate's body. Neither grievance notifies prison officials that Remmer informed Dowty of his injury and pain and that she did not provide him medical treatment in response. Her inclusion in the grievances is limited to descriptive information regarding how Remmer was injured. Thus, the grievances do not sufficiently grieve her misconduct regarding inadequate medical treatment, and that portion of Count 1 will be dismissed for failure to exhaust. *See Shaw v. Frank,* 288 F. App'x 299, 302 (7th Cir. 2008) ("All the grievance need do is object intelligibly to some asserted shortcoming." (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)).

But Remmer's Eighth Amendment claim is twofold. As designated by Judge Gilbert in the merit review order, Remmer is proceeding on an Eighth Amendment claim against Nurse Dowty for acting with deliberate indifference by forcing him to "touch a

deceased inmate's corpse, *and* for failing to provide any treatment for injuries Remmer sustained while doing so." (Doc. 6, p. 4) (emphasis added). In the Complaint, Remmer alleges that Nurse Dowty's instructions to assist her in lifting the deceased inmate were against the policies of the Illinois Department of Corrections and Wexford. (Doc. 1, p.14). He claims he was later informed by the healthcare administrator that the instructions were improper, and he should not have been asked to touch a deceased inmate. (*Id.* at p. 13).

As mentioned, both grievances state that Remmer was instructed by Nurse Dowty to assist her in lifting a deceased inmate. But even if the grievances sufficiently notified prison officials that Nurse Dowty gave Remmer improper instructions, this is not a constitutional claim. While the conduct may have been performed in violation of prison policy, the failure of prison officials to follow their own procedures does not, of itself, violate the Constitution. *See Scott v. EdinBurg,* 346 F. 3d 752, 760 (7th Cir. 2003) (noting that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). Taking Remmer's allegations in the Complaint as true, the Court finds that Dowty's instruction to Remmer to touch a deceased inmate does not state a claim for a constitutional violation. Therefore, the Court *sua sponte* dismisses this portion of Remmer's Eighth Amendment claim against Nurse Dowty. *See* FED. R. CIV. P. 12(b)(6); *Ledford v. Sullivan,* 105 F. 3d 354, 356 (7th Cir. 1997) (stating that "[s]*ua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading").

DISPOSITION

For the reasons stated above, the Court dismisses Plaintiff Remmer's claim that Defendant Dowty acted with deliberate indifference by forcing him to touch a deceased inmate's corpse (Count 1) for failure to state a claim under Rule 12(b)(6).

The Court **GRANTS in part** the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 37) filed by Defendant Dowty to the extent Remmer did not exhaust his administrative remedies regarding his claim that Defendant acted with deliberate indifference in failing to provide medical treatment for his injury on November 25, 2017 (Count 1). Because the Court has dismissed Remmer's claim regarding the touching of a deceased body pursuant to Rule 12(b)(6), the Motion for Summary Judgment is **DENIED in part as moot**. Defendant Dowty is **DISMISSED without prejudice.**

This matter shall proceed on Remmer's claims (Counts 2-4) against the remaining Defendants Wexford, Ahmed, and Shah. The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

Finally, the Clerk of Court is **DIRECTED** to change Defendant Dowty's name in accordance with footnote 1.

**IT IS SO ORDERED.**

DATED:   February 12, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**