IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARREN REMMER,

        Plaintiff,

v.                                                     Case No. 19-cv-420-NJR

WEXFORD HEALTH SOURCES, INC.,
FAIYAZ AHMED, and VIPIN SHAH,

        Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darren Remmer, a former inmate of the Illinois Department of Corrections ("IDOC"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The following claims remain:

Count 2:    Defendant Ahmed exhibited deliberate indifference to a serious medical condition by delaying hernia surgery or follow-up appointments for Remmer's hernias.

Count 3:    Defendant Shah exhibited deliberate indifference to a serious medical condition by failing to render adequate pre- and post-operative care for Remmer's hernias.

Count 4:    Defendant Wexford Health Sources, Inc. maintained a policy or practice that violated the Eighth Amendment by denying adequate medical care without making an individualized need assessment.

(Doc. 6, pp. 4-5). Counsel was recruited for Remmer on June 2, 2020 (Doc. 49).

This matter is before the Court on Remmer's motions to compel (Docs. 78 and 81).

Defendants filed responses to both motions (Docs. 79 and 86). Remmer filed a reply brief

(Doc. 80). The Court held a hearing on September 20, 2022.

### A. Motion to Compel

#### 1. *Discovery in Other Cases*

Remmer's first motion to compel (Doc. 78) seeks a response to Request No. 12 in his First Request for Production. Request No. 12 seeks expert reports, depositions, declarations, affidavits, and discovery materials in five federal lawsuits filed by individuals against Wexford Health Sources, Inc. ("Wexford") regarding its hernia treatment policy. The lawsuits include *Bryant, et al. v. Baldwin, et al.*, Case No. 18-cv-2192 (C.D. Ill.) (and all cases consolidated under the main case); *Heard v. Illinois Dep't of Corrections*, Case No. 06 C 644 (N.D. Ill.); *Mitchell v. Sood, et al.*, Case Nos. 16-cv-4012; 18-cv-4154 consolidated (C.D. Ill.); *Barnes v. Sood*, Case No. 15-cv-4088 (C.D. Ill.); and *Wilder v. Wexford*, Case No., 11 C 4109 (N.D. Ill.). Wexford objected to the request on a number of grounds including that it was vague and ambiguous, overbroad, unduly burdensome, and that the information sought is irrelevant and disproportionate to the needs of the case. Wexford also noted that the materials were in multiple litigation files and maintained by various defense counsel in different jurisdictions. Further, information regarding other inmates would be protected by the Health Insurance Portability and Accountability Act ("HIPAA").

Remmer argues that he is entitled to the discovery documents from these five cases because they are relevant to his policy claim regarding the treatment of hernias. He argues that discovery from these similar cases will help him establish an unconstitutional policy through practice or custom as the other identified cases sought to establish a

practice or custom by Wexford of denying surgery and treatment to cut costs. Remmer believes that discovery, including statements and admissions by Wexford, its employees, and experts in other cases could have some bearing on his claims. These documents include documents that are not readily available on PACER and, to the extent documents are available through PACER, Remmer argues that it would be burdensome for him to search the dockets of these cases.

Wexford argues that the documents from these various cases are not relevant or proportional to the needs of the case. Although all of the cases relate to a hernia policy, the cases involve different facilities, different medical providers, and different medical needs. None of the cases involved treatment at Lawrence Correctional Center or by the individual doctors who treated Remmer. Wexford also argues that Remmer has not offered anything beyond his own speculation that the documents would be probative and outweigh Wexford's burden of tracking down the documents.

The scope of discovery in federal civil cases is governed by Federal Rule of Civil Procedure 26. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In making a determination as to the proportionality of the discovery sought, the Court is to consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

The term "relevant" for the purposes of discovery is construed broadly to

encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.*, No. 17-2190, 2018 WL 8244003, at *2 (C.D. Ill. Dec. 21, 2018) (citations omitted).

Wexford points out that the Seventh Circuit has repeatedly held that its hernia policy is not inherently unconstitutional, but Remmer maintains that his *Monell* claim against Wexford focuses on both an expressed policy and/or a widespread custom or practice. Such a claim is "more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655-56 (7th Cir. 2021); *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) ("While it is not impossible for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, it is necessarily more difficult.") (internal quotations omitted). Further, when a policy itself is not unconstitutional, "considerably more proof than the single incident will be necessary in every case to establish" the plaintiff's claims. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality)). The Seventh Circuit has "repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations." *Dean*, 18 F.4th at 240. *See also Hildreth,* 960 F.3d at 426-27 (affirming summary judgment on a *Monell* claim against Wexford Health Sources, Inc.

because the plaintiff did not offer evidence of medication delays for other incarcerated people). Further, Wexford maintains that decisions about Remmer's medical care were personal and case specific, as were the medical decisions regarding other individuals. But in order to prove a *Monell* claim, a plaintiff often must offer evidence of other constitutional violations. *See Green v. Meeks,* No. 20-cv-00463-SPM, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (allowing broad ESI discovery of inmates with liver disease) (citing *Hildreth,* 960 F. 3d 420).

Thus, the Court finds that some evidence regarding the treatment of other inmates' hernias is relevant to Remmer's claims in this case. As drafted, however, the request is overbroad. As such, the Court **GRANTS in part** the motion to compel, but limits the request to expert reports obtained in the identified cases, as well as depositions, affidavits, or other declarations written by the providers at issue *in this case*, to include Dr. Ritz. Defendants shall have until **October 21, 2022**, to provide these documents or to state that such documents do not exist.

### 2. *Watermark*

Remmer also takes issue with a large red watermark of the case number spread diagonally across the page of every document produced by Wexford. Remmer attaches an example of the large watermark to his motion (*See* Doc. 78, p. 15). Remmer argues the watermark is a violation of Federal Rule of Civil Procedure 34(b)(2)(E)(i) which states that documents must be produced "as they are kept in the usual course of business." Although Remmer requested that Wexford place the watermark in the margins of the page, Wexford has thus far refused to produce clean copies of the documents.

In response, Wexford argues that the watermark is a necessary security measure to prevent copying of the document because a watermark in the margins could be removed. Wexford argues their security concerns are legitimate because Remmer produced a Wexford document in this case that Remmer was not authorized to possess, and it is unclear how counsel obtained the document. Further, Wexford argues the documents are the subject of the Protective Order, making security measures necessary. Wexford also argues that Remmer's citation to Rule 34 is misplaced as the Rule only focuses on the organization and categorization of documents to specific discovery requests rather than the labeling of a document with a watermark. *See Alexander v. Abbott Lab'ys Inc.*, Case No. 12-cv-52-NJR, 2014 WL 12547165, at *2 (S.D. Ill. Aug. 8, 2014).

Remmer points out that the Protective Order is limited to Wexford Medical Guidelines, Utilization Management Guidelines, the Provider Handbook, and other Wexford policies, guidelines, and procedures (Doc. 73), but all of the documents produced, including those not covered by the Protective Order, contain the large watermark.

The Court finds that the watermark, although large, is not as obtrusive as Remmer alleges and is similar to watermarks placed on Wexford guidelines produced in other cases before this Court. It does not make the documents illegible, nor does Remmer indicate that the documents are illegible. Wexford has also articulated a valid concern for the need for a watermark. But Wexford has only articulated a need for the watermark for those documents that are subject to the Protective Order in this case. Thus, any document that does not fall under the Protective Order but currently has a watermark should be re-

produced to Remmer without a watermark. Thus, Wexford is **ORDERED** to produce clean copies of those documents not covered by the Protective Order by **October 4, 2022**.

**B. Motion to Compel Answer to Second Set of Interrogatories and to Produce Documents**

Remmer's second motion takes issue with Wexford's objections to Interrogatory #'s 7 through 11 in the Second Set of Interrogatories and Second Request for Production # 13.

### 1. *Interrogatory #'s 7 and 8*

Interrogatory #'s 7 and 8 request the identify and information regarding other IDOC inmates who were denied or approved for surgery to repair hernias similar to Remmer's, in that they were painful but reducible. He seeks the identity of each inmate in the past or current custody from May 16, 2011, to the present. Wexford objected on the grounds that the information would violate HIPAA, that the requests were not limited in time or scope (Remmer's claims arose in November 2017 while he was at Lawrence Correctional Center), and it would be unduly burdensome.

In response to the motion to compel, Wexford argues that Remmer's claim against Wexford is not legitimate because he received a surgical evaluation shortly after his hernia developed. Wexford argues that the legitimacy of his claim diminishes the need for this discovery. Wexford also argues that the request is overbroad. Although Remmer suffered from an inguinal hernia, he has not limited his request to the type of hernia or the facility and/or providers at issue in this case. Wexford also argues that the request is extremely burdensome as the documents are not contained in one specific location but

would require Wexford to extract information from numerous medical files from all IDOC facilities.

Remmer's claim against Wexford is based on an unconstitutional policy of denying surgery to inmates suffering from hernias that are painful but not strangulated and are reducible. This requires Remmer to present evidence of a "widespread custom or practice" or a "series of bad acts," not just isolated events of inadequate medical care. *See Shields v. Ill. Dep't of Corr.*, 746 F. 3d 782, 796 (7th Cir. 2014). "District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 24, 2020) (quoting *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012)). *See also Andrews v. Sangamon Cty.* Ill., No. 18-cv-110, 2018 WL 6523186, at *1 (C.D. Ill. Dec. 11, 2018) (stating that the names of other inmates are relevant and may lead to admissible information in a *Monell* claim regarding the treatment of mentally ill prisoners). As previously discussed, an inmate must point to more than just his care to establish a *Monell* claim.

To the extent that Wexford tries to compare Remmer's request to the one before this Court in *Hazlitt v. Apple, Inc.*, Case No. 20-cv-421 (where plaintiff wanted personal information of each and every Apple customer in Illinois), that case is easily distinguishable because that information was not needed for class certification purposes and was overbroad. Here, Remmer must have information regarding similarly situated

Page 8 of 11

individuals in order to pursue his *Monell* claim. Thus, the Court will allow discovery as to this topic, but the parties must meet and confer in order to narrow the focus of any electronic search conducted by Wexford. The current request as submitted, seeking each inmate who was denied surgery to repair a reducible hernia from May 16, 2011, to the present, is overbroad. The request should be limited to collegial review submissions, as Wexford indicates those documents are within its control, and to those denials which occurred at Lawrence from 2015 (two years prior to Remmer's claims) until the date that Remmer received his surgery. The request should be further limited to the two types of hernias Remmer had during the relevant time-period.

The parties are **DIRECTED** to meet and confer to identify search terms that could be utilized by Wexford in searching its collegial review files. Counsel shall meet and confer on the terms by **October 4, 2022**. Wexford will then have an additional 30-days, up to and including **November 4, 2022**, to produce any responsive documents from the search. To the extent the parties believe that a protective order will be necessary to produce the documents, the parties may submit such an order for the Court's review prior to production of the documents.

### 2. *Request #13*

Request to Produce #13 seeks documents discussing, analyzing, or referencing the amount of money:

> (a) that was paid or will have to be paid by Wexford to provide treatment to an inmate or inmates for hernias (including, but not limited to, hernia surgery) as being a factor or a consideration in a treatment decision; (b) that was paid or will have to be paid by Wexford to provide treatment to inmates for hernias…as being excessive, over budget, or otherwise

financially problematic for Wexford or the profitability or return on investment of Wexford's contract with the Illinois Department of Corrections; (c) that could have been saved by Wexford if Wexford delayed or denied surgery to repair certain types of hernias…; or (d) that was saved by Wexford by delaying and/or denying surgery to repair certain types of hernias… The time period applicable to this Request is May 16, 2011 to the present.

(Doc. 81, p. 6). In response to Wexford objection, Remmer argues that the request is not compound, vague, or ambiguous and it does not exceed the discovery limits because the subparts all relate to a single topic: the cost of providing treatment for inmates with hernias. Remmer argues that he is entitled to discovery on the consideration of costs in treatment decisions and establishing policy, including emails, notes, presentations, memos, and other documents.

Wexford argues the request is compound and that Rule 34 does not allow for subparts. *See* Fed. R. Civ. P. 34. Wexford also argues it is overbroad, as it also requests documents going back to 2011.

To the extent that Wexford argues this request is compound and over the discovery limits set by this Court, those objections are **OVERRULED**. The Court finds that this request is relevant and proportional to the needs of the case. Accordingly, the parties are **DIRECTED** to meet and confer regarding search terms that could be utilized to identify relevant documents. The Court also limits the request to the relevant time-period—2015 until Remmer obtained his surgery—and should be limited to the treatment of inmates at Lawrence Correctional Center.

### 3. *Interrogatory #'s 9-11*

Interrogatory #'s 9-11 focus on Wexford's wealth. This includes questions

regarding Wexford's current net worth (#9), net income for each fiscal year from 2017-2021 (#10), and total revenue from the IDOC contract from 2017-2021 (#11). Remmer argues that the information is relevant for his claim of punitive damages. Wexford argues that Remmer should have to wait until he survives summary judgment and also make a showing that he has a *prima facie* case for punitive damages before Wexford turns over documents related to its corporate wealth. Remmer does not object to waiting to obtain such information until a ruling on any future summary judgment motion. Thus, the Court **RESERVES RULING** on the motion to compel until there is a ruling on any dispositive motion. Should Remmer's claims survive summary judgment, Remmer will be given leave to obtain this information prior to trial.

### C. Discovery Deadlines

In light of the additional discovery that still needs to take place in this case, including the deposition of Dr. Ritz, who is currently unavailable, the Court will extend the discovery and dispositive motion deadlines to allow for completion of the depositions and discovery. Discovery is now due **December 19, 2022**. Dispositive motions are now due **January 20, 2023**.

**IT IS SO ORDERED.**

**DATED:   September 21, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**